**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Alvin Hines, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 16 C 50064 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| *Defendant*. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Alvin Hines, brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying his social security disability benefits. For the reasons set forth below, the decision is remanded.

### **I. BACKGROUND**

On March 15, 2010, Plaintiff filed an application for supplemental security income benefits, alleging disability beginning June 1, 2006. R. 88, 267. Plaintiff's application was denied initially on September 2, 2010, and upon reconsideration on December 15, 2010. R. 145, 151. An administrative hearing was held on June 5, 2012, and the ALJ rendered a decision in favor of the government on June 29, 2012. R. 12-46, 94-102.

Plaintiff appealed the decision to the Appeals Council, and submitted additional evidence for consideration. R. 107-09. His request for review was granted, and the Appeals Council vacated the hearing decision and remanded the case for further proceedings on December 18, 2013. *Id*. To support its position, the Appeals Council cited to the new and material evidence provision of the Social Security Administration regulations (20 C.F.R. § 416.1470). *Id*. The

Appeals Council noted that the new evidence revealed Plaintiff's mental impairments were more severe than originally thought, and upon remand, requested that the ALJ address specific areas, which it listed in bullet point form, to complete the administrative record and issue a new decision. R. 108-09.

On September 17, 2014, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 47-87. The ALJ acknowledged that Plaintiff's case had been remanded so that his case could be reviewed in light of the additional evidence, which dealt primarily with Plaintiff's mental impairments. R. 50-51.

At the hearing, Plaintiff testified that the last time he was employed was in 2006 (in Texas), and that he made a living driving a truck at that time. R. 55. When asked about his daily activities, Plaintiff told the ALJ he does not cook because he is "very forgetful," and may "forget . . . something on." R. 59. When the ALJ asked the Plaintiff if he goes to the store for groceries, he stated, "I can't go . . . I don't remember too good . . . I might get lost or something . . . ." R. 60. Plaintiff told the ALJ, "I can stand about 15 minutes" and I can walk "half a block." R. 57. He further testified that the heaviest thing he can lift is "a gallon of milk." R. 60. Plaintiff indicated that he uses an inhaler, "Maybe four or five times a day," and a nebulizer (at home) four times a day. R. 58. Plaintiff told the ALJ that his sleep is "terrible," but also indicated that he takes Seroquel, which helps him sleep better. *Id*.

Plaintiff revealed he hears voices, "not regularly but every now and then" and that the voices tell him to "get up . . . move around . . . [and] be quiet . . . ." R. 56-57. He further admitted to having problems being around people. *Id*. 57. Plaintiff indicated that there were some occasions where he would not leave his apartment for three days because he was "really depressed." *Id*.

During the hearing, the ALJ pointed out that the Plaintiff had "issues with drugs and alcohol before." R. 61. She asked Plaintiff if he still took drugs and drank alcohol, to which the Plaintiff responded, "No, I don't drink or smoke" and indicated it had been years since he did either of those things. R. 62. Plaintiff confirmed that he was still receiving treatment from Crusader Community Health and Rosecrance treatment centers, which prescribed him medications that treated his breathing issues, and muscle spasms. R. 63.

During the hearing, the ALJ questioned Clinical Psychologist and Medical Expert, Dr. Michael Carney. R. 64. Dr. Carney told the ALJ that he had reviewed Plaintiff's medical and mental health records and was able to identify Plaintiff's mental impairments that were established in those records. R. 65. Dr. Carney described Plaintiff's impairments as being "schizoaffective." R. 71-72. He agreed that there was, "some emotional withdrawal and isolation" that was consistent with the record, and that Plaintiff's depressive symptomatology provided evidence of a schizoaffective diagnosis. R. 72-73. Dr. Carney explained that Plaintiff suffered from schizoaffective disorder because "there's some thought disorder as well as some affective disorder." R. 73. He also recognized that Plaintiff experienced problems with "sleep, appetite, energy, and concentration." R. 72. Dr. Carney further told the ALJ that Plaintiff's impairments "probably equal[ed] a listing . . . in terms of social functioning and concentration, pace and persistence." R. 74. He confirmed that if Plaintiff's complaints were credible, his impairments would equal the listing, starting June 2012. *Id*. at 75-76.

The vocational expert (VE) testified to Plaintiff's past work, and identified this work (within the last fifteen years) as being medium level unskilled jobs, such as warehouse or DOT laborer, SVP 2, DOT 922.687-058; truck driver, which the VE identified as medium semi-skilled, SVP of 4, DOT 905.663-014. R. 80-81. The VE also indicated that examples of

unskilled work existed. R. 81. In response to the ALJ's hypothetical, where a person of Plaintiff's age, education and work experience who had no exertional limitations but is limited to simple, routine, repetitive tasks and a work environment free of fast-paced production requirements with only simple work-related decision making, few if any changes in the work setting; no more than occasional contact with the public, co-workers and supervisors; and in addition to that must avoid concentrated exposure to extreme temperatures, humidity, environmental and respiratory irritants, the VE indicated that a person with these restrictions would have past work that was available to him. *Id*. at 81-82. The VE revealed that this person could perform the job of "laborer, stores position," but that he could not perform the truck driver's position because "that's not a simple job." R. 82. The VE further opined that if the hypothetical included having no public contact, but occasional contact with supervisors and co-workers, one job would remain available. R. 82.

The VE testified that light jobs would be available to Plaintiff if past work was not available under the ALJ's hypothetical. R. 83. The VE stated that "cleaner job, DOT 323.687-014 . . . [and] hand packers, DOT 920.686-038 . . . ." existed. *Id*. The VE further indicated that at the light unskilled level, laundry workers, DOT 361.687-014, vehicle cleaner, DOT 919.687-014" and dishwashers, DOT 318.687-010 would also be available. R. 83-84. Finally, the VE indicated that if the hypothetical were modified to include a "medium exertion level" with "occasional public contact," decreasing the amount of public contact would reduce the number of jobs available by twenty-five percent. R. 84-85.

On November 20, 2014, Plaintiff's application was denied for the second time. R. 114-138. Plaintiff appealed to the Appeals Council, but his request for review was denied. R. 1-3.

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Additionally, as the Seventh Circuit has repeatedly held, the federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

# III. DISCUSSION

Plaintiff makes one argument. He argues that the ALJ's decision should be remanded because the ALJ's credibility analysis regarding Plaintiff's psychotic symptoms was not supported with substantial evidence. Accordingly, the Court will limit its analysis to this issue.

**A. The ALJ's credibility analysis regarding Plaintiff's psychotic symptoms was not supported by substantial evidence.**

The ALJ must support her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Prochaska v. Barnhart,* 454 F.3d 731, 734-35 (7th Cir. 2006). A decision denying benefits does not have to address every piece of evidence, but the ALJ must provide "an accurate and logical bridge" between the evidence and her conclusion. *Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012).

In her opinion, the ALJ identified the following severe impairments for Plaintiff: adjustment disorder; possible malingering; psychotic disorder; schizoaffective disorder and history of alcohol dependence. R. 117. The ALJ indicated that these impairments interfered "more than minimally" with Plaintiff's ability to perform basic work tasks, and further held they were "severe within the meaning of the Social Security Regulations." *Id.* In language that is all too familiar to this Court, the ALJ further noted that these impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that the Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms [were] not credible." R. 126. She went on to state, "the record as a whole, including the medical evidence; the [Plaintiff's] testimony; the [Plaintiff's] activities; and other factors . . . do not fully support the credibility of the [Plaintiff] regarding the severity or frequency of symptoms . . . ." R. 136. The court disagrees for the following reasons.

i. Objective Medical Evidence

To support her findings, the ALJ provided a summary of Plaintiff's medical record, noting areas where Plaintiff denied experiencing auditory or visual hallucinations, or suicide ideation before his onset date. R. 126-27. She picked out specific dates such as August 10, 2010, in which she found a psychological consultative examination of Plaintiff disclosed signs of malingering. R. 127. In June 2013, the ALJ noted Plaintiff's mental status as being "completely within normal limits and his condition was [again] deemed stable." R. 130. In December 2013, the ALJ pointed out that although Plaintiff admitted to hearing voices daily, medication helped to calm him. R. 131. Finally, in 2014 the ALJ highlighted the fact that Plaintiff was "doing alright" and his mood was "good," and he reported "no concerns with symptoms of mental health." *Id*. Despite these findings, the court recognizes that there is objective medical evidence to support Plaintiff's credibility.

First, Plaintiff's psychotic symptoms was heavily documented throughout this record, before and after his onset date of June 1, 2006. R. 414, 417, 426, 450, 454, 508-09, 681, 701, 709, 732, 741, 743, 745, 747, 767, 775, 781, 782, 787, 817-18, 826, 848, 852, 854-55, 867-68, 883, 893, 1007. Although Plaintiff may have experienced periods of improvement with his mental health, a reasonable person would accept Plaintiff's medical records to support his overall credibility. *Prochaska*, 454 F.3d at 734-35.

Second, the state's medical expert, Dr. Carney confirmed that Plaintiff's impairments fell under the 12.03 "plus schizo-affective" listing. R. 71-73. He further stated that there is "some emotional withdrawal and isolation" that the Plaintiff reported in his testimony that is "consistent with the record." R. 72. Dr. Carney told the ALJ that if he were to take all of Plaintiff's complaints as credible, Plaintiff's condition would equal a listing (pursuant to 20 C.F.R. §§

7

416.920(d) and 416.925), but the onset would have to be June 2012, and not before that. R. 76. In particular, Plaintiff's records from Rosecrance treatment center (dated June 2012), and progress notes (dated July 2012) indicate history, symptoms, and diagnosis of his mental illness. R. 766-784, 787. Dr. Carney told the ALJ that Plaintiff, "probably equals a listing . . . in terms of social functioning and concentration, pace and persistence . . ." and further stated, "[it] would [be] hard to think that he . . . could maintain full-time employment given the kind of things that he does have." R. 74.

### ii. Malingering

The ALJ highlighted the fact that there was evidence of Plaintiff being a malingerer. R. 127. A written report by Dr. John L. Peggau, Psy.D. dated August 10, 2010 indicates that Plaintiff "may have been malingering today." R. 457. However, Dr. Peggau did not formally diagnose Plaintiff as a malingerer. Further, when asked about Plaintiff's malingering, Dr. Carney told the ALJ that, "it is hard to determ[ine] . . . [whether Plaintiff's] presentation to providers . . . [was] genuine or not." R. 75. Dr. Carney indicated that "providers are not detectives, they go on . . . the symptoms that are . . . described to them. . . [the Plaintiff is] on medications, he's on Tegretol, which is a mood stabilizer, and he's on Seroquel, which is again a mood stabilizer, an antipsychotic." *Id*. Dr. Carney stated that these medications were consistent with Plaintiff's diagnosis. R. 76. The Seventh Circuit has noted that vagueness or evasiveness that plaintiffs may have display when questioned about their illnesses could reflect the effects of their psychotic state. *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010).

The Court further notes that in her decision, the ALJ restricted Plaintiff to work that had "no interaction with the public." R. 125. It would appear that some credibility regarding the severity and frequency of Plaintiff's symptoms was recognized by the ALJ for her to include this

restriction.

### iii. Motivation for Treatment at Rosecrance

The ALJ found it suspicious that Plaintiff sought treatment at Rosecrance right after the first hearing. R. 135. Plaintiff points out that he sought treatment at Rosecrance for just that purpose, to obtain treatment, and not because he was trying to get benefits. The ALJ's suspicions are speculative. There is no evidence in the record that establishes Plaintiff's reasons for seeking treatment at Rosecrance was for anything other than improving his condition.

### iv. Plaintiff's Presentation was Consistent with his Psychotic Disorder

Plaintiff argued that the ALJ failed to consider whether his presentation was consistent with his psychotic disorder. At the hearing, Plaintiff told the ALJ that he experienced psychotic symptoms such as hearing voices at night, having problems being around people, and experiencing periods of depression. R. 56, 57. Instead of crediting Plaintiff's testimony, the ALJ focused on the alleged prevalence of inconsistent statements he made throughout his case. R. 134. The ALJ reasoned that any significant restrictions described by Plaintiff regarding activities of daily living could not be verified with any reasonable degree of certainty because of these inconsistent statements. *Id*. For example, the ALJ noted that in December 2010, Plaintiff reported the ability to engage in self-care household chores, and that his existing limitation was due to physical pain, not emotional difficulties. *Id*. She pointed out that Plaintiff reported problems paying attention, following written instructions, and getting along with authority figures, friends, and neighbors, but evidence from Rosecrance treatment center showed Plaintiff applied for a bus pass, and participated regularly in activities such as bingo, karaoke, and volunteer activities. *Id*. Finally, the ALJ highlighted Plaintiff's moderate examination and diagnostic impairments, and conservative treatment and response to treatment, finding they were

9

not as debilitating as he alleged. R. 135.

Although the court affords an ALJ's credibility finding "considerable deference" and will overturn it only if "patently wrong," the ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations, and must justify the credibility finding with specific reasons supported by the record. *Prochaska,* 454 F.3d at 738; 20 C.F.R. § 404.1529(c); *Villano*, 556 F.3d at 562. Here, the ALJ repeatedly mischaracterized the record in identifying purported "inconsistencies" in Plaintiff's testimony. The ALJ also failed to build a logical bridge between the evidence to her conclusion. Engaging in household chores does not mean Plaintiff did not continue to experience psychotic symptoms. The court emphasizes that the ALJ is not allowed to "play doctor" by using her own opinions to fill an evidentiary gap in the record. *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). As Dr. Carney mentioned, the medications that Plaintiff received were consistent with his psychotic symptoms. R. 76.

For the foregoing reasons, the court finds that the ALJ's decision regarding Plaintiff's credibility is not supported by substantial evidence.

**B. On remand, the ALJ should reconsider Plaintiff's credibility consistent with SSR 16-3p.**

The ALJ's decision was based on the requirements of SSR 96-7p. R. 125. Plaintiff argues that SSR 96-7p was rescinded and replaced by SSR 16-3p, which eliminates the use of the term credibility from subjective symptom evaluations. On remand, the ALJ must apply the new process incorporated into SSR 16-3p.

### IV. CONCLUSION

For the reasons stated in this opinion, this Court finds that a remand is warranted. On remand, the ALJ must comply with SSR 16-3p. However, the Court expresses no opinion as to the ultimate determination of disability on remand. Accordingly, Plaintiff's motion for summary

10

judgment (Dkt. 10) is granted, and the Commissioner's motion (Dkt. 16) is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: August 3, 2017          By: _____
                                                   Iain D. Johnston
                                                   United States Magistrate Judge

`